# SUPREME COURT.

BENJAMIN CAHOON, FRIEND COOK and POWERS L. GREENE, agt. THE PRESIDENT, DIRECTORS AND CO. of the Bank of Utica.

A claim *for money had and received* cannot be joined in a complaint with a claim founded on *a refusal to deliver up promissory notes,* alleged to have been paid and satisfied. The latter has always been treated as a *tort,* (3 J. R. 452.)

*Herkimer Special Term, April,* 1850.—The plaintiffs are the general assignees of Samuel W. Brown (now deceased.) This action is brought under the following circumstances. Brown, in his lifetime, procured to be discounted by the Bank of Utica three notes, amounting in the aggregate to three thousand dollars; two of which were made by himself, and one was made by Brown and Rossiter. At the time of getting the notes discounted, he placed in the hands of the bank as collateral security, a bond and mortgage made by S. Churchill, on which was due something over $3000. The notes were not paid at maturity; but, afterwards, the bond and mortgage were paid up, satisfying the notes and leaving a surplus in the hands of the bank of $89.42. This sum has been demanded by the plaintiffs; and also the notes, on the allegation that Brown's property having paid the note of Brown and Rossiter, his assignees are entitled to the possession of it, as evidence against Rossiter. The complaint sets out the above facts, and demands judgment for the $89.42; and that the notes be delivered up to the plaintiffs. To this complaint the defendant has demurred for misjoinder of actions.

WARD HUNT, *for the demurrer.*

A. LOOMIS, *contra.*

GRIDLEY, Justice.—It is manifest that this is the union of a demand for money had and received, with a claim which, under the former practice, would have been the foundation of a bill in chancery to compel the delivery of the notes, under the powers by which that court directed the delivery of deeds and other writings, (see Jeremy's Equity Jurisdiction, 468.) The facts on which the pleader relies to show that the plaintiffs are entitled to both kinds of relief, are set forth in the complaint; and both kinds of relief are distinctly demanded, in the prayer of the complaint. Now, if this be so, these causes of action require different trials. The money demand is triable by a jury, and the claim in equity is triable by the court, (sections of the Code, 253, 254.) In the one case, the verdict would be for the sum demanded, $89.42; in the other, upon the facts of the case, the judgment of the court would be, granting the plaintiffs to

be right in the law, that the notes be delivered up ; a verdict, it is at once seen, is inappropriate, unless it be a special verdict, on which, when found, the court pronounces judgment.

It is true that by section 253 it is provided; that "when in an action for money only, or for *specific real or personal property*, there shall be an issue of fact, it shall be tried by a jury." Now this section relates to personal property which was formerly the subject of an action of replevin, and does not relate to claims in equity ; several provisions seem incompatible with such a case ; for example, the 5th subdivision of section 207. But,

2. Suppose that instead of being a claim in equity it is a proceeding to obtain the possession of personal property under chapter 2 of the 7th title of the code, sections 206 to 217 inclusive ; then there should have been an affidavit of the facts, and very special pleadings should have been pursued, entirely incompatible with the union of this with a demand for money had and received. Again, the 167th section forbids the uniting of this with any other cause of action. This section embraces seven distinct classes of actions, providing that any of the same class may be united; of these the sixth is, "claims to recover personal property, with or without damages for the withholding thereof." "But the causes of action so united must all belong to one only of these classes," is the express injunction of the code at the close of this section.

3. But it is argued that these causes of action are authorized by the 1st and 7th subdivisions of this section. The 1st embraces causes of action arising out of contract, express or implied ; that the claim for the money is sought under an implied promise, is quite clear ; but a claim founded on a refusal to deliver up notes that are paid up, and "*functio officio*" has always been treated as a tort, (*Todd* v. *Crookshank*, 3 J. Rep. 452.) Again, there is no such contract set out. If the law would imply a contract to support such a claim, it would imply a contract in a case of assault and battery, to obey the laws of the land, and authorize damages for its breach.

The 7th subdivision embraces "claims against a trustee, by virtue of a contract or by operation of law." This section manifestly relates to claims in equity against a trustee, properly so called, and has no reference to a common law action for money had and received. We must have some regard, in construing the code, to the great landmarks of the law, as it existed before that instrument became a law. This would be stretching the doctrine of torts over every transaction of life. This could not have been the intention of the Legislature. Demurrer allowed.